IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RAUL PEREZ-GONZALEZ, | ) | |
| | ) | |
| Petitioner, | ) | 15 C 4210 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| STEPHEN DUNCAN, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

In 2010, Petitioner Raul Perez-Gonzalez pleaded guilty to first-degree murder and was sentenced to thirty-five years' imprisonment. In 2012, he was found in direct criminal contempt of court and sentenced to an additional ten years' imprisonment, to be served consecutively with his thirty-five-year sentence for murder. Perez-Gonzalez has now filed a habeas corpus petition challenging his conviction and sentence for direct criminal contempt of court. He argues that the State breached his plea agreement and thereby violated his due process rights by initiating contempt proceedings against him. For the reasons provided herein, the petition is denied.

**Background**

On January 29, 2009, a woman was fatally shot in Elgin, Illinois. *People v. Perez-Gonzalez*, 13 N.E.3d 360, 362 (Ill. App. Ct. 2014). The next day, Perez-Gonzalez informed police that he had been driving the vehicle from which the shots had been fired. *Id.* He also told police that two other men, Manith Vilayhong and Tony Rosalez, had been inside the vehicle with him at the time of the shooting. *Id.*

Vilayhong had ordered the shooting, and Rosalez had fired the gun. *Id.* Perez-Gonzalez, Vilayhong, and Rosalez were each charged with first-degree murder. *Id.*

On August 27, 2010, the State sent Perez-Gonzalez's counsel a letter outlining the terms of a plea offer. Resp't's Ex. D at 9–10, ECF No. 9-4. Under the terms of the offer, Perez-Gonzalez would initially plead guilty to a charge of first-degree murder while in possession of a firearm. *Id.* at 9. As a result, he would be sentenced to thirty-five years' imprisonment—twenty years for first-degree murder, plus a fifteen-year enhancement for possession of a firearm. *Id.* After pleading guilty, Perez-Gonzalez then would cooperate with the State's prosecution of Vilayhong and Rosalez by testifying against them. *Id.* Once Perez-Gonzalez's cooperation was "successfully completed," the State would amend his charge to omit references to a firearm and vacate the fifteen-year enhancement, thus reducing his sentence to a term of twenty years. *Id.* at 9–10. In the event that Perez-Gonzalez did not fully cooperate, however, he "would then be required to serve the terms of the initial agreement, which would be 35 years [in the Illinois Department of Corrections], plus [mandatory supervised release] as well as fees." *Id.* at 10; *accord Perez-Gonzalez*, 13 N.E.3d at 362; Pet. at 3, ECF No. 1.

The Circuit Court of Kane County, Illinois, held a plea hearing in Perez-Gonzalez's criminal case on August 30, 2010. *See* Resp't's Ex. L at 1, ECF No. 9-12. During the hearing, the parties informed the court of the plea agreement's terms as follows:

2

> [ASSISTANT STATE'S ATTORNEY]: [T]his agreement contemplates Mr. Perez-Gonzalez'[s] cooperation with the State regarding two co-defendants. Once he has completed that cooperation as determined by the People of the State of Illinois and as outlined in the offer letter that I gave to [defense counsel] dated August 27th, 2010 . . . it is contemplated by all parties that we will bring Mr. Perez-Gonzalez back into court. We will at that point in time vacate or delete that part of the charge that has to do with a firearm and also then, Judge, vacate the 15-year add on, [at] which point in time the Defendant would have the 20-year sentence plus the mandatory supervised release. I think that's all the terms.
>
> [DEFENSE COUNSEL]: Judge, that is accurately a statement of our discussion and the basis upon which our plea is being entered.

*Id.* at 3–4. The court accepted the terms of the plea agreement and accordingly sentenced Perez-Gonzalez to thirty-five years' imprisonment. *Id.* at 11.

On October 28, 2011, the State appeared in court for a pretrial hearing in the criminal case against Rosalez. *Perez-Gonzalez*, 13 N.E.3d at 362. Rosalez's trial was scheduled to begin the following week and, according to the State, Perez-Gonzalez was planning to refuse to testify. *Id.* Later that day, at the State's request, Perez-Gonzalez was brought before the court, placed under oath, and questioned by the State's attorney about the allegations against Rosalez. *Id.* Perez-Gonzalez did not answer the State's questions, and he testified that he would refuse to answer any further questions. *Id.* The court ordered Perez-Gonzalez to answer, but he still refused to do so. *Id.* at 363. The court therefore found Perez-Gonzalez in direct contempt. *Id.*[1]

---

[1] During the pretrial hearing on October 28, 2011, the court did not specify whether it found Perez-Gonzalez to be in civil or criminal contempt. *See id.*

On November 11, 2011, the State filed a petition for adjudication of direct criminal contempt of court based on Perez-Gonzalez's refusal to answer questions at the pretrial hearing in Rosalez's case. *Id.* On February 22, 2012, Perez-Gonzalez waived his right to a jury trial in the contempt proceeding, and the parties filed a written stipulation of evidence. *Id.* The stipulation described the terms of Perez-Gonzalez's underlying plea agreement as follows:

> Perez-Gonzalez . . . entered into plea negotiations with the People and ultimately did agree to plead guilty to a first degree murder charge. That agreement required Perez-Gonzalez to testify truthfully in any case against any co-defendant.

Resp't's Ex. I at 23, ECF No. 9-9; *accord Perez-Gonzalez*, 13 N.E.3d at 363–64. After holding a hearing on the State's contempt petition, the court found that Perez-Gonzalez was in direct criminal contempt of court for refusing to testify in Rosalez's case. *Perez-Gonzalez*, 13 N.E.3d at 363.

On June 28, 2012, the court held a sentencing hearing. *Id.* at 364. That same day, the parties again submitted a written stipulation of evidence, this time describing Perez-Gonzalez's underlying plea agreement as follows:

> Before going to trial, [Perez-Gonzalez] entered into an agreement with the People of the State of Illinois to testify against Vilayhong and Rosalez. That agreement required [Perez-Gonzalez] to give truthful testimony. He would be sentenced to a minimum sentence of 20 years in prison plus the 15-year add-on. When he completed his end of the agreement, his sentence would be reduced to 20 years.

Resp't's Ex. I at 52; *accord Perez-Gonzalez*, 13 N.E.3d at 364. The court sentenced Perez-Gonzalez to ten years' imprisonment for direct criminal contempt, to be

4

served consecutively with his thirty-five-year sentence for murder. *Perez-Gonzalez*, 13 N.E.3d at 364.

Perez-Gonzalez appealed his conviction and sentence for direct criminal contempt of court. On appeal, he argued that the State breached the plea agreement underlying his murder conviction and thus violated his due process rights when it filed the petition for adjudication of contempt. Resp't's Ex. B, Br. & Argument, at 8–13, ECF No. 9-2. The Illinois Appellate Court rejected his due process argument and affirmed his conviction and sentence. *Perez-Gonzalez*, 13 N.E.3d at 365, 372. Perez-Gonzalez then filed a petition for leave to appeal (PLA) in the Illinois Supreme Court, raising the same issue. Resp't's Ex. F, PLA, *People v. Perez-Gonzalez*, No. 118158. The Illinois Supreme Court denied the PLA on November 26, 2014. Resp't's Ex. G.

On May 13, 2015, Perez-Gonzalez filed a habeas corpus petition in this Court pursuant to 28 U.S.C. § 2254. The sole issue raised in his petition is whether the State breached the terms of his plea agreement and thereby violated his due process rights by filing the petition for adjudication of contempt.

## **Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a writ of habeas corpus may issue only if the petitioner demonstrates that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). A federal habeas court may grant habeas relief only if it determines that (1) the state court's decision on the merits "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state court's decision was "based on an unreasonable determination of the facts." *Id.* § 2254(d).

For purposes of the AEDPA, a state court's decision is "contrary to" clearly established Supreme Court precedent if the state court either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *accord Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011). In turn, a state court's decision is an "unreasonable application of" clearly established Supreme Court precedent if the state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts," or if the court "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. A state court's decision is an unreasonable application of Supreme Court precedent only if it is "objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted). These standards are highly deferential and "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

A federal habeas court may also grant relief if the state court's decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's decision is based on an "unreasonable determination of the facts" if it "rests upon factfinding that ignores the clear and convincing weight of the evidence." *Newman v. Harrington*, 726 F.3d 921, 928 (7th Cir. 2013) (internal quotation marks omitted). A federal habeas court presumes the factual findings of the state appellate court to be correct, unless the petitioner offers clear and convincing evidence to show otherwise. 28 U.S.C. § 2254(e)(1); *Newman*, 726 F.3d at 928; *Badelle v. Correll*, 452 F.3d 648, 659 (7th Cir. 2006).

## Analysis

In his habeas petition, Perez-Gonzalez requests relief from his conviction and ten-year sentence for direct criminal contempt of court. In the alternative, he asks the Court to issue a certificate of appealability with respect to the due process claim raised in his petition. Respondent argues that Perez-Gonzalez's petition should be denied on the merits and that no certificate of appealability should be issued.[2] For the reasons that follow, Perez-Gonzalez's petition is denied, but the Court grants his request for a certificate of appealability.

---

[2] Respondent has not raised any other arguments in his response brief. Resp. at 6–10, ECF No. 8. He concedes that Perez-Gonzalez has exhausted his state court remedies and that his habeas petition is timely. *Id.* at 6.

7

I.   **Merits Review of Due Process Claim**

Perez-Gonzalez contends that his conviction and sentence for direct criminal contempt of court violate his due process rights because the State's initiation of contempt proceedings breached the agreement pursuant to which he pleaded guilty to first-degree murder. According to Perez-Gonzalez, the consequences of his refusal to testify in Rosalez's criminal case "were already figured into the plea agreement." Pet. at 4. Those consequences, he argues, were limited to the imposition of his original thirty-five-year sentence, and the plea agreement thus barred the State from filing a petition for adjudication of contempt based upon his refusal to testify. *Id.*

The Illinois Appellate Court rejected this argument on direct appeal. In reaching its decision, the court first noted that "a defendant may have a due process right to enforce [a plea] agreement" if the agreement induced his guilty plea. *Perez-Gonzalez*, 13 N.E.3d at 365 (citing *People v. Whitfield*, 840 N.E.2d 658, 666 (Ill. 2005)). The court found, however, that the State had not promised in Perez-Gonzalez's plea agreement that it would refrain from filing a petition for adjudication of contempt if he refused to testify in Rosalez's case. *Id.* at 365–66. This finding was based on the court's consideration of the plea agreement's terms as described in the offer letter, the transcript of Perez-Gonzalez's plea hearing, and the parties' written stipulations. *Id.* Because the plea agreement did not bar the State from initiating contempt proceedings, the court held that the petition for

8

adjudication of contempt did not violate the agreement and thus did not violate Perez-Gonzalez's due process rights. *Id.* at 365.

The Illinois Appellate Court's decision was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. First, the court correctly identified the legal rule governing Perez-Gonzalez's due process claim—namely, the rule that "if a plea of guilty is entered in reliance on a plea agreement, a defendant may have a due process right to enforce the agreement." *Id.* (citing *Whitfield*, 840 N.E.2d at 666). The Supreme Court announced this legal rule in *Santobello v. New York*, holding that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. 257, 262 (1971); *accord Campbell v. Smith*, 770 F.3d 540, 546 (7th Cir. 2014) (discussing *Santobello*); *Villanueva v. Anglin*, 719 F.3d 769, 777 (7th Cir. 2013) (same).

The state court then reasonably applied *Santobello* to the facts of Perez-Gonzalez's case. As explained above, the court concluded that the State had not promised to refrain from initiating contempt proceedings in the event that Perez-Gonzalez refused to testify in Rosalez's case. *Perez-Gonzalez*, 13 N.E.3d at 365. Because the State had not made such a promise, the court reasoned, it did not breach the plea agreement or violate Perez-Gonzalez's due process rights upon filing the petition for adjudication of contempt. *Id.*

Perez-Gonzalez argues that the Illinois Appellate Court's decision was contrary to or an unreasonable application of *Santobello* for two reasons. First, he

9

takes issue with the fact that the court failed to cite *Santobello* in its decision. Reply at 4, ECF No. 10. This argument can be disposed of quickly. It is well established that a state court need not cite applicable Supreme Court precedents in order to issue a decision that is neither contrary to nor an unreasonable application of those precedents. *Harrington v. Richter*, 562 U.S. 86, 98 (2011) (citing *Early v. Packer*, 537 U.S. 3, 8 (2002)). Thus, the Illinois Appellate Court's failure to cite *Santobello* does not automatically entitle Perez-Gonzalez to federal habeas relief.

Second, Perez-Gonzalez contends that the facts of his case are so similar to those of *Santobello* that *Santobello* required the Illinois Appellate Court to rule in his favor. In *Santobello*, the defendant had agreed to plead guilty in exchange for the prosecutor's promise to make no recommendation at his sentencing hearing. 404 U.S. at 258. Nevertheless, at sentencing, the prosecutor recommended that the court impose the maximum sentence available. *Id.* at 259. Because the prosecutor broke a promise that had induced the defendant to plead guilty, the Supreme Court held that the defendant was entitled to relief from his sentence. *Id.* at 262–63.

According to Perez-Gonzalez, his case is indistinguishable from *Santobello* because "the State reneged on its promise to leave [his] sentence at 35 years by seeking a contempt finding and an additional ten-year sentence." Reply at 3–4. If the State had, in fact, promised to refrain from seeking a contempt finding and an additional sentence for criminal contempt, then this argument might have merit. But the state court determined that the State had not made any such promise. *Perez-Gonzalez*, 13 N.E.3d at 365. The fact that the State never promised to refrain

from initiating contempt proceedings renders this case materially distinguishable from *Santobello*. Thus, the state court did not contradict or unreasonably apply *Santobello* in holding that the State neither breached the plea agreement nor violated Perez-Gonzalez's due process rights.

Next, Perez-Gonzalez contends that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent because it "ignored . . . any constitutional concern for fundamental fairness." Reply at 4 (citing *People v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1969)). This argument, too, is unpersuasive. It is true that many federal courts of appeals have referenced general principles of fundamental fairness in addressing criminal defendants' due process rights in connection with plea agreements. *See, e.g.*, *United States v. Schilling*, 142 F.3d 388, 394 (7th Cir. 1998) (internal quotation marks omitted) ("[P]lea agreements are unique contracts and the ordinary contract principles are supplemented with a concern that the bargaining process not violate the defendant's right to fundamental fairness under the Due Process Clause."). But such references to general principles of fairness appear to stem from dicta in *Santobello*, rather than from other Supreme Court precedents governing Perez-Gonzalez's due process claim. *See Santobello*, 404 U.S. at 261 (noting the importance of "fairness in securing agreement between an accused and a prosecutor"). Furthermore, Perez-Gonzalez cites no Supreme Court precedent other than *Santobello* in support of his fairness argument. *See* Reply at 4. The Court therefore rejects this argument for

11

the same reason that it rejects Perez-Gonzalez's contention that the state court's decision was contrary to *Santobello*.

Finally, Perez-Gonzalez argues that the state court's interpretation of his plea agreement involved an unreasonable determination of fact with regard to the issue of whether the State had promised to refrain from initiating contempt proceedings. He maintains that the plea agreement implicitly provided that the exclusive consequence of his refusal to testify would be the imposition of his original thirty-five-year sentence. By initiating contempt proceedings and seeking an additional ten-year sentence, he contends, the State imposed sanctions beyond those contemplated under the agreement. Pet. at 5; Reply at 5–6.

For its part, Respondent argues that the plea agreement did not expressly limit the State's ability to initiate contempt proceedings and that the State was therefore free to initiate such proceedings in the event that Perez-Gonzalez refused to testify. Resp. at 8.

As a threshold matter, the Court notes that the state court's decision characterized the interpretation of Perez-Gonzalez's plea agreement as a conclusion of law, not a conclusion of fact. *See Perez-Gonzalez*, 13 N.E.3d at 365 (citing *Avery v. State Farm Mut. Automobile Ins. Co.*, 835 N.E.2d 801, 821 (Ill. 2005)) ("The construction or interpretation of a contract and its legal effect presents a question of law, which we review *de novo*."). If the state court's interpretation of the plea agreement was a determination of state law, then its interpretation is unreviewable by a federal habeas court. *See, e.g., King v. Pfister*, 834 F.3d 808, 814 (7th Cir.

2016) ("It is well-established that on habeas review, a federal court cannot disagree with a state court's resolution of an issue of state law."); *accord Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Both parties, however, treat the state court's interpretation of the plea agreement as a finding of fact. *See* Resp. at 7–9; Reply at 5–8. Moreover, the parties' consensus on this point is consistent with federal and state case law holding that the interpretation of ambiguous terms in a plea agreement is an issue of fact. *See Gillis v. Grams*, 351 F. App'x 111, 113 (7th Cir. 2009) (citing *United States v. Williams*, 198 F.3d 988, 992 (7th Cir. 1999)) (noting in a § 2254 proceeding that "[t]he terms of a plea agreement are questions of fact"); *Installco Inc. v. Whiting Corp.*, 784 N.E.2d 312, 319 (Ill. App. Ct. 2002) ("If contract language is ambiguous . . . interpretation of the language is a question of fact."). The Court will therefore assume for purposes of this case that the state court's interpretation of the plea agreement's terms was a finding of fact.

Even with the benefit of this assumption, however, Perez-Gonzalez is not entitled to habeas relief, because the state court's interpretation did not "rest upon factfinding that ignore[d] the clear and convincing weight of the evidence." *Newman*, 726 F.3d at 928. After considering the terms of the plea agreement as described in the offer letter, at the plea hearing, and in the parties' written stipulations, the state court found no indication that the State agreed that "the *only* consequence for [Perez-Gonzalez's] failure to testify would be the State's not moving to vacate the 15-year add-on." *Perez-Gonzalez*, 13 N.E.3d at 365 (emphasis added). Nothing in the language of the materials that the state court considered requires

13

the original thirty-five-year sentence to be the exclusive consequence of Perez-Gonzalez's noncooperation. The original offer letter stated merely that, in the event Perez-Gonzalez refused to testify, he "would then be required to serve the terms of the initial agreement, which would be 35 years [in the Illinois Department of Corrections], plus [mandatory supervised release] as well as fees." Resp't's Ex. D at 10. The letter is silent on the issue of whether the State could also seek a finding of contempt. *See id.* In addition, the descriptions of the plea agreement provided at the plea hearing and in the parties' written stipulations contained no discussion of the potential consequences of Perez-Gonzalez's noncooperation. Resp't's Ex. I at 23, 52; Resp't's Ex. L at 3–4.

That said, the interpretation of the plea agreement urged by Perez-Gonzalez is not unreasonable, and some may consider the 10-year sentence for contempt excessive, given that he also will serve 35 years for the underlying offenses. Indeed, in hindsight, it would have been far better for Perez-Gonzalez to have refused to testify in the Rosalez trial in the first instance and take the 35 years offered by the State. But the deferential standard of the AEDPA constrains the review of this Court, and the Court cannot say that the state court's interpretation of the plea agreement's terms was unreasonable.

In sum, Perez-Gonzalez has not shown that the Illinois Appellate Court's decision was contrary to or an unreasonable application of Supreme Court precedent. Nor has he shown that the decision was based on an unreasonable

14

determination of the facts. As such, his due process claim does not entitle him to habeas relief under AEDPA.

## II.     Certificate of Appealability

A state prisoner seeking relief under AEDPA may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

As the Supreme Court recently emphasized, the question of whether a habeas petitioner has made a substantial showing of the denial of a constitutional right "is not coextensive with a merits analysis." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Rather, in deciding whether to issue a certificate of appealability, "the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). "This threshold question should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Id.* (quoting *Miller-El*, 537 U.S. at 336).

Here, although the Court concludes in its merits analysis that Perez-Gonzalez's claims do not warrant habeas relief, Perez-Gonzalez has met the threshold standard for issuance of a certificate of appealability. The Supreme Court has provided only general guidance regarding the scope of criminal defendants' due

15

process rights where, as here, a plea agreement's silence on a subject arguably creates ambiguity in the agreement's terms. Given the limited guidance on this issue under relevant Supreme Court precedent, the Court believes that jurists of reason could debate whether the State deprived Perez-Gonzalez of his due process rights by filing the petition for adjudication of contempt and grants a certificate of appealability in this case.

## Conclusion

For the reasons stated herein, the petition for a writ of habeas corpus [1] is denied. The Court issues a certificate of appealability with respect to the issue of whether the State breached Perez-Gonzalez's plea agreement and thus violated his due process rights by initiating contempt proceedings against him. This case is hereby terminated.

**IT IS SO ORDERED.**       **ENTERED   1/30/18**

**John Z. Lee**
**United States District Judge**